**SECOND DIVISION**
**DOYLE, P. J.,**
**DILLARD, P. J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**June 12, 2026**

# In the Court of Appeals of Georgia

A26A0276. THIGPEN et al. v. PRICKETT et al.

DOYLE, Presiding Judge.

Brian and Patricia Thigpen, individually and as surviving parents of their deceased son Brian Thigpen, Jr. ("Brian"),[1] appeal from the dismissal of their tort claims against Raymond Prickett, Brian's supervisor at a work site.[2] The trial court

---

[1] Patricia also appears as the administratrix of Brian's estate.

[2] The plaintiffs initially named other coworkers and employers, and the tort claims against those defendants were also dismissed. On appeal, the Thigpens make no argument regarding the dismissal as to those defendants. Accordingly, any challenge to the dismissal of defendants other than Prickett is deemed abandoned. See, e.g., *Massey v. State Farm Fire and Cas. Co.*, 363 Ga. App. 588, 592–93 (871 SE2d 685) (2022) (deeming certain claims to be abandoned on appeal with respect to unchallenged portions of trial court order). See generally Court of Appeals Rule 25(d)(1) ("Any enumeration of error that is not supported in the brief by citation of authority or argument may be deemed abandoned.").

dismissed their claims on the ground that the Workers' Compensation Act, OCGA § 34-9-1 et seq. ("the WCA"), is the exclusive remedy for workplace injuries. Specifically, the trial court ruled that "no [d]efendant in the case, including Prickett, committed a direct affirmative act that would nullify the protection of the exclusive remedy afforded them by the [WCA]." The Thigpens contend that the trial court erred (1) by determining as a matter of law that Prickett did not commit an affirmative act that would authorize these tort claims outside of the scope of the WCA; and (2) by improperly weighing the credibility of witnesses and considering Brian's relative negligence as factors in its determination. Discerning no reversible error, we affirm.

We review legal questions arising from the grant of a motion to dismiss de novo, see *DeKalb County Republican Party, Inc. v. Raffensperger*, 376 Ga. App. 757, 759(1) (921 SE2d 23) (2025), and we review a trial court's factual determinations under the "any evidence" rule, see *Conrad v. Conrad*, 278 Ga. 107, 109 (597 SE2d 369) (2004).

The record reflects that Brian was 16 years old when he was hired by Terra Excavating, LLC ("Terra"). Terra was engaged as a subcontractor to perform grading work at a construction site on a surface mining granite quarry owned by Vulcan Construction Materials, LLC. Prickett was employed by Terra as a supervisor at the

2

site, and Brian worked under his supervision at the site along with another Terra employee, Jonathan Byrd.

It is undisputed that Brian was new to operating heavy machinery. Three weeks into Brian's tenure at Terra, he showed up at the work site and, along with Byrd, worked on tasks assigned by Prickett to perform grading activity by building up an elevated pad of dirt approximately four feet higher than the surrounding grade.[3] In the morning, Brian operated a haul truck, which was loaded by Prickett with an excavator, and Byrd operated a bulldozer to level the grade. It is undisputed that, at some point in the middle of the day, Prickett instructed Byrd to operate a compactor on the newly established pad, but Brian "wanted to," so "[h]e took off running before [Byrd] got" to the machine. Prickett then told Byrd to "go down there with him" and operate the haul truck. Over the radio, Prickett told the men that he was sloping the pad but was not finished, and that Brian should concentrate on compacting the middle of the pad, thereby staying away from the edges which were unstable: "[H]e wasn't supposed to go … further than the middle, that's what we told him."

---

[3] The pad was where a rock crushing and screening plant would be installed.

On Brian's first pass in the compactor, as he attempted to back the machine, it slid off of the pad and rolled, killing Brian. The Thigpens filed this action against Vulcan, Terra, and related individual defendants. Several defendants moved to dismiss based on the exclusive remedy provision in the WCA, and the trial court reserved ruling on the merits, allowing limited discovery to determine whether the action was permitted by the "affirmative act" exception to the WCA's exclusivity bar.[4] Discovery ensued, and the Thigpens later named Prickett as a defendant; he joined in the earlier motions to dismiss.

Following a second hearing, the trial court entered an order granting the motions to dismiss as to each of the defendants, including Prickett. In its order, the trial court found that the undisputed evidence shows that Prickett did not commit an "affirmative act" directed at Brian that would have caused or increased the risk of injury to him. The Thigpens now appeal.

---

[4] The trial court relied on a statement in *Pardue v. Ruiz*, 263 Ga. 146, 148 (429 SE2d 912) (1993), that WCA "immunity would not ... extend to [a] supervisor when he commits an affirmative act causing or increasing the risk of injury to another employee." See also *Rogers v. HHRM Self-Perform, LLC*, 365 Ga. App. 862, 870–71(2) (880 SE2d 351) (2022).

1. The Thigpens first argue that the trial court erred by concluding that no evidence shows that Prickett committed an affirmative act that would overcome the WCA's exclusivity bar to work-related tort claims. This argument is without merit.

Under OCGA § 34-9-11(a), "[t]he rights and the remedies granted to an employee by [the WCA] shall exclude and be in place of all other rights and remedies of such employee, his or her personal representative, [and] parents, ... and all other civil liabilities whatsoever at common law or otherwise, on account of such injury, loss of service, or death[.]" Thus, "[a]s a general principle, the WCA is the exclusive remedy for a worker or next of kin who sustains an 'injury' arising out of and in the course of employment." *Simmons*, 373 Ga. App. at 70(1) (citing OCGA § 34-9-11(a)). This is true whether the injured employee attempts to sue his employer or a fellow employee who caused the injury.[5]

---

[5] See *Odom v. Franklin*, 368 Ga. App. 246, 247 (889 SE2d 405) (2023) ("[W]hen an injury falls within the purview of the Act, the injured employee is barred from recovering in tort against not only his employer, but also against an employee of the same employer."). See also *Smith v. Ellis*, 291 Ga. 566, 571(2)(b) (731 SE2d 731) (2012) ("Put simply, an injured employee may not ... recover compensation under the Act ... and then turn around and sue the employer or 'an employee of the same employer[.]'") (citing *Thorn v. Phillips*, 164 Ga. App. 47, 48 (296 SE2d 251) (1982) ("It is now established beyond peradventure that Workers' Compensation provides the exclusive remedy for the plaintiff ... for injuries caused by acts of a fellow employee, arising out of and in the course of plaintiff's employment."); *Williams v.*

The trial court ruled in part, and it is undisputed, that Brian's death arose out of and in the course of his and Prickett's employment with Terra. Thus, this is an ordinary suit against a co-employee of the same employer, which is barred by the WCA's exclusive remedy provision applicable to injuries arising out of and in the course of employment. See generally *Odom*, 368 Ga. App. at 247.

Nevertheless, the Thigpens rely on a statement first made in *Pardue*:

> [W]e hold that where negligence is based on a general non-delegable duty of the employer (such as supervision and safety), the supervisory employee shares in the immunity of the employer. This immunity would not, however, extend to the supervisor when he commits an affirmative act causing or increasing the risk of injury to another employee.

263 Ga. at 148. This passage must not be read in isolation. The Supreme Court arrived at its holding in *Pardue* when evaluating a specific claim inapposite here.

---

*Thomas*, 187 Ga. App. 527, 529 (370 SE2d 773) (1988) (explaining that an injured employee could not recover from his own uninsured motorist policy for an injury caused by a co-employee because the injured employee "is barred by the exclusive rights and remedies provision of OCGA § 34-9-11 from obtaining judgment either against his employer or the co-employee who injured him"); *Fountain v. Shoney's Big Boy, Inc.*, 168 Ga. App. 489, 489 (309 SE2d 671) (1983) (OCGA § 34-9-11 "(as amended by Ga. L. 1974, pp. 1143, 1144; 1980, pp. 1145, 1146) now specifically bars plaintiff (as an employee) from her action for damages for tort against her employer and fellow employee making her remedy exclusively a workers' compensation matter under the act").

In [*Pardue*], the Supreme Court of Georgia addressed whether a former general rule[6] that an injured employee could not hold a managerial employee of his direct employer liable in tort should be applied in a different context: Should managerial employees be entitled to immunity from suit when their direct employer is the statutory employer of the injured employee? ... In *Pardue*, the Supreme Court of Georgia looked at this former rule and concluded that it was "persuasive in determining if the supervising [or managerial] employee should be treated as the statutory employer." Accordingly, it concluded in the case before it that the vice president and safety officer of a general contractor should be considered the statutory employer of the injured employees of a subcontractor and share in his employer's immunity from suit. It also stated: '*This immunity would not, however, extend to the supervisor when he commits an affirmative act causing or increasing the risk of injury to another employee.*'

*Sprowson v. Villalobos*, 355 Ga. App. 279, 284–85 (841 SE2d 453) (2020) (cleaned up; emphasis added) (citing *Pardue*, 263 Ga. at 147–48 & n.1.).

It is this last statement that the Thigpens rely upon here and that the trial court analyzes. But *Pardue's* analysis was not of co-employees. Instead, it examined whether

---

[6] "[T]he law prior to the 1974 amendment to [the WCA held] that 'an employee, after having collected Workmen's Compensation benefits from the employer, *can* proceed against a fellow employee in a common law tort action against the offending employee as an individual.'" *Cunningham v. Heard*, 134 Ga. App. 276, 277 (214 SE2d 190) (1975) (emphasis added and omitted).

"the vice president and safety officer of a general contractor should be considered the statutory employer of the injured employees of a subcontractor and share in his employer's immunity from suit," and it derived from a context when the law held that fellow employees could be liable to each other despite the WCA. *Sprowson*, 355 Ga. App. at 285. See *Pardue*, 263 Ga. at 147. For this reason, it mattered whether the defendant was a fellow employee or an executive, with the latter being deemed the alter ego of the corporation and therefore immune when acting in a general managerial capacity. See generally *Cunningham*, 134 Ga. App. at 277 (applying former law allowing actions against the offending fellow employee as an individual and holding a defendant executive immune under the WCA as an alter ego of the corporation and not a fellow employee). That is not the present legal or factual context, and "*Pardue* is therefore distinguishable because it addressed the sole path for the vice president of a general contractor to be found immune from tort liability" in a claim by a subcontractor's employee. *Sprowson*, 355 Ga. App. at 285.

Here, it is undisputed that Terra employed both Prickett and Brian as co-employees, and therefore, *Pardue's* language "is not implicated here."[7] *Sprowson*, 355

---

[7] See, e.g., *Rogers*, 365 Ga. App. at 870–71(2) (relying on *Pardue* and analyzing the reach of WCA immunity with respect to safety officers employed by a member of

8

Ga. App. at 284. Thus, Prickett's "immunity is not dependent upon whether he should be considered the alter ego of a statutory employer." *Sprowson*, 355 Ga. App. at 285. Rather, he is immune as Brian's co-employee. See OCGA § 34-9-11(a) ("The rights and the remedies granted to an employee by this chapter shall exclude and be in place of all other rights and remedies of such employee[.] ... No employee shall be deprived of any right to bring an action against any third-party tortfeasor, other than an employee of the same employer[.]") Cf. *Sprowson*, 355 Ga. App. at 285.[8]

_____

a joint venture).

[8] We note that the relied upon language in *Pardue* (the last sentence of the opinion) is potentially dicta, i.e., a general statement not necessary to determine the issue before the court, and it has no authority as its source. See generally *Zepp v. Brannen*, 283 Ga. 395, 397 (658 SE2d 567) (2008) (noting that the Supreme Court is "not bound to follow ... dicta in a prior case [where] the point now at issue was not fully debated"). Further, the language has been called into question as irreconcilable with the current language of the WCA. See *Rogers*, 365 Ga. App. at 870(2). Given this, clarity on the language from the Supreme Court of Georgia would benefit the bench and bar.

And even if the language in *Pardue* applied, the record shows no affirmative act on the part of Prickett that would defeat the WCA's exclusive remedy bar. Prickett did not affirmatively instruct Brian to operate the compactor, and upon learning that he was doing so, Prickett instructed him to stay in the middle of the elevated pad and away from the edges. Further, Prickett was not in the immediate area where Brian operated the compactor. Under these circumstances, the trial court correctly found that Prickett had not taken any affirmative acts that would allow Thigpen to sue his co-employee based on the language in *Pardue*. Compare *Padgett v. CH2M Hill Southeast, Inc.*, 866 FSupp 560, 562 (MD Ga. 1994) (finding evidence of an affirmative

9

2. The Thigpens next argue that the trial court erred by construing the factual record against them and essentially deciding the merits of the case without full discovery. Their appellate argument acknowledges but ultimately overlooks the import of a threshold determination regarding WCA immunity. The controlling facts of the record are not in dispute — Brian's death arose out of and in the course of his employment — and it was not subject to an exception under *Pardue*. 263 Ga. at 147–48. See *Sprowson*, 355 Ga. App. at 285. Having determined that the action is barred by the exclusive remedy afforded by the WCA, the trial court correctly dismissed the action.

*Judgment affirmed. Dillard, P. J., and Senior Judge C. Andrew Fuller concur.*

---

act when a safety officer erroneously told a freelance welder that a valve in an enclosed chamber was "ready for welding" despite the presence of a high concentration of oxygen that subsequently ignited and burned the welder).